408 P.2d 500

**OHIO CASUALTY INSURANCE COM-
PANY, Plaintiff-Appellant**

v.

**AMERICAN INSURANCE COMPANY,
Defendant-Appellee.**

No. 7768.

Supreme Court of New Mexico.

Dec. 6, 1965.

Neal & Neal, Hobbs, for appellant.

Girand, Cowan & Reese, Hobbs, for appellee.

MOISE, Justice.

This is an appeal from a declaratory judgment in a proceeding wherein plaintiff-appellant, hereinafter called "Ohio" sought to have defendant-appellee, hereinafter called "American" held responsible for a pro rata share of a damage settlement negotiated by Ohio in an automobile accident case.

There is no substantial dispute concerning the facts. Ohio had insured one Paul

Prather against public liability resulting from automobile accidents and American had insured Watson Truck and Supply Company, hereinafter referred to as "Watson." Prather was involved in an accident while driving a Thunderbird automobile owned by Watson. The circumstances under which Prather had possession are fully set forth in the trial court's findings 7 and 8, which read:

"7. On the same day, but prior to the accident in question, Watson Truck and Supply Company had delivered the motor vehicle in question to Prather for the purpose of testing it. Prather did so and returned the vehicle to the Watson lot, expressing satisfaction with the car but dissatisfaction with the proposed terms of the sale or trade. Prather responded negatively to the offer of Watson to take the car for additional testing and started to leave Watson's lot, but then returned to inquire of Watson's employee, Don Piper, if there were any Watson cars which he could service, having serviced Watson cars prior to this date. He was told by Piper to take the car in question to his station for a wash job and to check it for an oil leak. While the car was at Prather's filling station, he received a call to pick up a vehicle belonging to another customer for servicing. Without obtaining permission from Piper, he drove the car for the purpose of taking an assistant to his other customer's place of business to pick up the customer's car, and was involved in the accident enroute.

"8. That Piper, on behalf of Watson, did not intend or expect Prather to use the vehicle for any purpose other than to take it to his filling station, wash it, check it for an oil leak and return it to the Watson lot."

Whereas Ohio contends that Prather had possession as a prospective customer, it is clear from finding 7 quoted above that the court considered that the possession was for the purpose of washing and checking for an oil leak. This view of the facts is amply supported by the evidence.

Ohio settled the litigation arising out of the accident after calling upon American to pay its pro rata part of the settlement. There is no question concerning the procedure adopted or the reasonableness of the settlement.

The policy issued by American had a rider or endorsement containing the following provision, which is referred to as the "omnibus" clause:

"B.  *Definition of Insured.*

*Persons Insured.*  Each of the following is an insured with respect to the Garage Operations Hazard, except as provided below: * * * (3) with respect to the Automobile Hazard (a) any person while using, with the per-

mission of the named insured, an automobile to which the insurance applies under paragraph (a) of the Automobile Hazard, provided such person's actual operation * * * is within the scope of such permission, * * *."

The endorsement contains the following definitions:

"A. *Hazards Defined.*

*Garage Operations Hazard.* The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'; including the

*Automobile Hazard* (a) the ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the nemd insured and used principally in garage operations; (b) the ownership, maintenance or use of any automobile owned by the named insured in connection with garage operations while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use."

This is followed by specifications of certain exclusions from the definitions, none of which are here pertinent.

Paragraph B of the endorsement contains "Definition of Insured" and under it "Persons Insured" followed by a statement excluding from persons insured " * * * (ii) any person or organization other than the named insured or its directors, stockholders, partners or employees while acting within the scope of their duties as such, with respect to operations performed by independent contractors for the named insured; * * *"

Under Paragraph C of the endorsement we find "garage" and "premises" defined as follows:

"(d) *Garage.* 'Garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place.

(e) *Premises.* 'Premises' means premises where the named insured conducts garage operations, and includes the ways immediately adjoining but does not include any portion of such premises upon which business operations are conducted by any other person or organization."

In the policy issued by American, the definitions of "Insured" included the following:

"* * * The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement: * * *

(b) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any occurrence arising out of the operation thereof, * * *."

The "division (2)" mentioned in the definition of "Insured" relates to property damage and personal injury liability arising from operation of an automobile.

■ Plaintiff first contends that the endorsement is controlling, and that in the event there is a conflict between the policy provisions and those in the rider, the rider must prevail. Defendant does not dispute that this is the law. We so held in the recent case of Lax v. Fidelity and Casualty Company of New York, 74 N.M. 123, 391 P.2d 411. See also, Farmers Insurance Exchange v. Ledesma (U.S.C.A. 10, 1954) 214 F.2d 495. However, American argues that notwithstanding this rule, there is no inconsistency between the policy and the endorsement which would make it liable in the present situation. Briefly stated, their position is simply that Prather was an independent contractor and losses occurring during his operations are specifically ex-

cluded under (ii) of the exceptions to "Definition of Insured" set forth above. In addition, it is their position that coverage granted in the rider to "Garage Operation Hazard" and "Automobile Hazard." applies only to the "Premises" operated as a garage by Watson, the insured, and not to any and all "garage" operations, regardless of whose they may be.

■ We find American's argument in this regard most persuasive. The policy in III(b) excluded from definition of insured all coverage for loss arising out of operations of a garage or service station. As we read the endorsement, this exclusion is modified concerning Watson's garage operations on the premises where Watson conducts its activities. However, we see no intimation or suggestion in the endorsement, that damage resulting from operation of an automobile of Watson by an independent contractor in connection with a garage or service station business of some other person was covered.

There can be no question that at the time of the accident Prather was an independent contractor operating the car in connection with his own service station business. 5 Blashfield's Cyclopedia of Automobile Law and Practice, § 2966.

We see nothing in the omnibus clause quoted above which in any way affects our conclusion as to the rights and liabilities of the parties under the facts here present.

**580**

The interesting question of whether the omnibus clause should be liberally construed so as to require pro rata contribution will have to await a proper case.

The judgment of the trial court is affirmed. It is so ordered.

CARMODY, C. J., and CHAVEZ, J., concur.